**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EFRAIN CARRILLO,<br>Plaintiff,<br>v.<br>CALIBER HOLDINGS LLC *et al.*,<br>Defendants. | Case No. 2:25-cv-10270-CV (RAOx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>**[DOC. # 10]** |

Before the Court is Plaintiff Efrain Carrillo's ("Plaintiff") November 24, 2025 Motion for Order Remanding Action to State Court. Doc. # 10 ("Motion"). Defendant Caliber Holdings LLC ("Caliber") filed an opposition on December 17, 2025. Doc. # 14 ("Opposition"). With its Opposition, Caliber also filed declarations from Dawn Traverse, Alec Fumurescu, and Bobby McBride. Doc. ## 14-1, 14-2, 14-3. On December 24, 2025, Plaintiff filed a reply and evidentiary objections. Doc. ## 18 ("Reply"), 18-1.

On January 5, 2026, the Court took the Motion under submission, finding it appropriate for decision without oral argument. Doc. # 19; *see also* Fed. R. Civ. P. 78; C.D. Cal. L. Civ. R. 7-15. For the reasons stated below, the Court DENIES the Motion.

## I. <u>BACKGROUND</u>

### A. Plaintiff's Allegations

Plaintiff filed this action in Los Angeles County Superior Court on September 10, 2025. Doc. # 1 ¶ 1. Plaintiff alleges that he is a California resident who worked for Caliber Holdings L.L.C. and Caliber Holdings of California LLC ("Defendants") as a non-exempt employee from approximately July 2016 through at least October 2024. Doc. # 1-1 ¶ 2.[1]

The Complaint asserts eight causes of action against Defendants: (1) failure to pay overtime wages, Cal. Lab. Code §§ 510, 1194, and 1199 (*id.* ¶¶ 31–37); (2) failure to pay minimum wages, Cal. Lab. Code §§ 1197 and 1199 (*id.* ¶¶ 38–43); (3) failure to provide meal periods, Cal. Lab. Code §§ 226.7 and 512 (*id.* ¶¶ 44–51); (4) failure to provide rest periods, Cal. Lab. Code § 226.7 (*id.* ¶¶ 52–59); (5) failure to pay all wages due upon termination, Cal. Lab. Code §§ 201–203 (*id.* ¶¶ 60–67); (6) wage-statement violations, Cal. Lab. Code § 226 (*id.* ¶¶ 68–75); (7) failure to indemnify, Cal. Lab. Code § 2802 (*id.* ¶¶ 76–82); and (8) unfair competition, Cal. Bus. & Prof. Code § 17200 (*id.*

[1] Caliber asserts that Plaintiff erroneously served his complaint on "Caliber Holdings of California LLC," which Caliber asserts is not a legal entity and not a proper defendant, and that the Complaint improperly names "Caliber Holdings L.L.C." as a defendant rather than Caliber Holdings LLC. Doc. # 1 at 2 n.1.

¶¶ 83–87). Plaintiff seeks unpaid wages, including minimum and overtime wages; liquidated damages; meal and rest period premiums; statutory penalties; waiting-time penalties; reimbursement damages; injunctive relief; restitution; pre- and post-judgment interest; attorney fees; costs; and other relief. *Id.* at 21–22.

Plaintiff seeks to represent six classes. The "Non-Exempt Class" consists of all current and former non-exempt employees of Defendants in California at any time from four years before the filing of the Complaint until class notice. *Id.* ¶ 21.A. The "Meal Period Class" consists of members of that group who worked shifts of five hours or more. *Id.* ¶ 21.B. The "Rest Period Class" consists of members of that group who worked shifts of three and one-half hours or more. *Id.* ¶ 21.C. The "Late Pay Class" consists of all former non-exempt employees of Defendants in California at any time from three years before the filing of the Complaint until class notice "who did not receive all their due wages upon separation of their employment from Defendants." *Id.* ¶ 21.D. The "Wage Statement Class" and "Expense Class" are also separately defined. *Id.* ¶¶ 21.E–F.

As relevant here, the Complaint alleges that, for at least four years before this action was filed and continuing to the present, Defendants "at times" failed to pay overtime wages to Plaintiff and other members of the Non-Exempt Class, "or some of them." *Id.* ¶ 12. Plaintiff alleges that Plaintiff and other members of the Non-Exempt Class worked shifts exceeding eight hours in a workday, forty hours in a workweek, or seven consecutive workdays in a workweek without receiving all overtime wages owed. *Id.* ¶¶ 12, 35–36. The Complaint identifies several alleged mechanisms for the unpaid overtime, including failure to accurately track or pay for all hours worked at the proper overtime rate; off-the-clock pre-shift and post-shift work; work beyond scheduled hours; work during meal periods; walkie-talkie-related work; failure to include all remuneration, including commissions and incentive pay, in the regular rate of pay; and editing or manipulation of time entries to show fewer hours than actually worked. *Id.* ¶¶ 12, 35. Plaintiff alleges that, as a result, Plaintiff and other members of the Non-

Exempt Class were deprived of overtime wages in amounts to be determined at trial. *Id.* ¶ 37.

**B. Caliber's Removal**

Caliber removed this action on October 24, 2025 under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. Doc. # 1 ¶¶ 11–44. Caliber alleges that CAFA's minimal-diversity requirement is satisfied because Plaintiff is a California citizen and Caliber is a citizen of Delaware and Texas. *Id.* ¶¶ 15–23. Caliber also alleges that the proposed class contains more than 100 members. *Id.* ¶¶ 12, 24–25. Plaintiff does not challenge CAFA's minimal-diversity or numerosity requirements. He challenges only the amount in controversy and the Court's equitable jurisdiction over his UCL claim.

As relevant here, Caliber calculated the amount in controversy for Plaintiff's overtime claim by assuming one unpaid overtime hour per week, applying the 2021 California minimum wage of $14.00, applying the overtime multiplier of 1.5, and multiplying that figure by 220,000 workweeks. *Id.* ¶ 33. This calculation produces $4,620,000 attributable to Plaintiff's overtime wage claim. *Id.* Caliber also calculated approximately $5,220,000 in waiting-time penalties and included a 25% attorney-fee estimate based on the overtime calculation. *Id.* ¶¶ 34–38. In sum, Caliber estimated that the total amount in controversy is at least $10,995,000. *Id.* ¶ 38. Caliber stated that the 220,000-workweek figure represented only part of the class period and that the amount in controversy was likely higher if the full period placed at issue by the Complaint were included. *Id.* at 7 n.3, ¶ 33.

**C. Caliber's Evidence in Opposition to Remand[2]**

In support of its Opposition, Caliber submitted declarations concerning the employment data underlying its calculations. Dawn Traverse is Caliber's Human

[2] Plaintiff objects to Caliber's evidence on several grounds, including lack of foundation, lack of personal knowledge, hearsay, authentication, the best-evidence rule, improper summary evidence, speculation, and improper lay opinion. Doc. # 18-1 at 2–5. The objections are OVERRULED for

Capital Management Specialist. Doc. # 14-1 ¶ 2. She states that she is familiar with Caliber's Workday system, which Caliber uses for personnel information for current and former employees. *Id.* Traverse further states that Caliber's Workday system can generate employee pay and employment-history reports showing employee names, job titles, hire dates, termination dates, and overtime-exempt status. *Id.* ¶ 3. Traverse states that, in February 2025, Caliber's Teammate Services team generated a report that included all non-exempt employees who worked for Caliber in California at any time between September 10, 2021 and February 13, 2025. *Id.* ¶ 4.

Alec Fumurescu is a data analyst at Morgan Lewis, counsel of record for Caliber in this case. Doc. # 14-2 ¶ 2. He states that he analyzed the Workday employment-history reports produced by Caliber. *Id.* ¶¶ 3–5. Based on that analysis, Fumurescu states that at least 6,417 non-exempt employees worked for Caliber in California between May 1, 2024 and February 13, 2025, and that those employees worked at least 220,009 total workweeks in non-exempt California positions during that period. *Id.* ¶ 6. Fumurescu further states that at least 10,973 non-exempt employees worked for Caliber in California between September 10, 2021 and February 13, 2025, and that those employees worked at least 910,875 total workweeks in non-exempt California positions during that period. *Id.* ¶ 8.

Fumurescu also states that, of the non-exempt employees who worked for Caliber in California between February 1, 2024 and February 13, 2025, at least 1,436 individuals had their employment terminated during that same period. *Id.* ¶ 7. He further states that at least 3,664 non-exempt employees who worked for Caliber in California

---

purposes of this Motion. At the remand stage, the Court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," including declarations. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation omitted). The Court relies on the Traverse, Fumurescu, and McBride declarations only to estimate the number of California non-exempt employees, workweeks, terminated employees, and minimum wage inputs placed in controversy. The Court does not admit the underlying employment records for any merits purpose and does not decide whether the same showing would suffice at class certification, summary judgment, or trial.

between September 10, 2022 and February 13, 2025 had their employment terminated during that period. *Id.* ¶ 8.

Bobby McBride is Caliber's Senior Director, Payroll. Doc. # 14-3 ¶ 2. He states that he reviewed Plaintiff's personnel and pay records and that those records show Plaintiff was paid at least $33.00 per hour throughout his employment with Caliber and $34.56 per hour at the time of termination. *Id.* ¶ 3. McBride also states that, throughout the period from September 10, 2021 to the present, all individuals employed by Caliber in non-exempt positions in California have been paid at least the applicable California minimum wage. *Id.* ¶ 4.

## II. LEGAL STANDARD

A defendant may remove an action filed in state court if the federal court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). The removing defendant bears the burden of establishing that removal is proper and that federal subject-matter jurisdiction exists. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009).

CAFA gives federal courts jurisdiction over class actions in which the proposed class contains at least 100 members, at least one plaintiff is diverse in citizenship from at least one defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *Ibarra*, 775 F.3d at 1195; 28 U.S.C. § 1332(d). "[N]o antiremoval presumption attends cases invoking CAFA[.]" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

When the complaint does not specify the amount of damages sought, the removing defendant may satisfy the amount-in-controversy requirement by making a plausible allegation in the notice of removal. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). If the plaintiff contests the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. The parties may submit evidence outside the complaint, including affidavits,

declarations, and other summary-judgment-type evidence. *Ibarra*, 775 F.3d at 1197. The amount in controversy is "an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202–03 (9th Cir. 2015) (rejecting argument "conflating the amount in controversy with the amount of damages ultimately recoverable").

A plaintiff may challenge the defendant's jurisdictional allegations in a notice of removal through either a facial attack or a factual attack. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). A facial attack accepts the truth of the defendant's allegations but argues that they are insufficient on their face to invoke federal jurisdiction. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). A factual attack contests the truth of the jurisdictional allegations themselves. *Id.* A factual attack may be made by presenting contrary evidence or by making a reasoned argument why the assumptions underlying the defendant's amount-in-controversy calculation are not supported by the complaint or the evidence. *Harris*, 980 F.3d at 700. Once a plaintiff mounts a factual attack, the defendant bears the burden of proving, by a preponderance of the evidence, that its assumptions are reasonable. *Id.* at 701.

A removing defendant may rely on reasonable assumptions to estimate the amount in controversy. *Arias*, 936 F.3d at 925. But the defendant may not rely on "mere speculation and conjecture" or assumptions "pulled from thin air." *Ibarra*, 775 F.3d at 1197, 1199. If the district court rejects one of the defendant's assumptions, it should not automatically assign the claim a value of zero when a reasonable alternative assumption is available. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).

## III. DISCUSSION

Plaintiff seeks remand on two grounds. First, he argues that Caliber has not shown that CAFA's $5 million amount-in-controversy requirement is satisfied. Doc. # 10 at 8–22. Second, he argues that remand is independently warranted because the Court

lacks equitable jurisdiction over his UCL claim, which seeks restitution for the same unpaid wages Plaintiff seeks through his Labor Code claims. *Id.* at 3, 23–26. As explained below, the Motion is DENIED. The Court finds that Plaintiff's overtime allegations reasonably place more than $5 million in controversy. And because the Court has CAFA jurisdiction over this action, Plaintiff's equitable-jurisdiction argument does not require remand.

**A. Plaintiff Raises a Factual Attack on Caliber's Removal**

Caliber argues that Plaintiff raised only a facial attack on removal because Plaintiff did not submit contrary evidence or offer his own amount-in-controversy calculation. Doc. # 14 at 14–16. The Court disagrees.

The Ninth Circuit has defined the relevant line between a facial and factual attack on removal in *Salter* and *Harris*. In *Salter*, the plaintiff argued that the removing defendant had not attached evidence to the notice of removal showing that the amount in controversy exceeded $5 million. 974 F.3d at 964–65. The Ninth Circuit treated that challenge as facial because the plaintiff did not dispute the truth, reasonableness, or factual basis of the defendant's jurisdictional allegations; he argued only that the defendant's allegations came without proof. *Id.* at 965.

By contrast, in *Harris*, the plaintiff challenged the assumptions built into the defendant's amount-in-controversy calculation, including assumptions about which employees worked shifts long enough to support the claimed meal- and rest-period penalties. 980 F.3d at 700. The Ninth Circuit held that the challenge was factual because the plaintiff's brief supporting remand attacked the reasonableness and evidentiary foundation of the defendant's assumptions. *Id.* at 700–01. It also made clear that a plaintiff may raise a factual attack through reasoned argument instead of submitting competing evidence or calculating an alternative amount in controversy. *Id.* at 700 ("A factual attack . . . need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence.").

Plaintiff's Motion is closer to *Harris* than *Salter*. Plaintiff challenges the assumptions underlying Caliber's amount-in-controversy calculation and disputes Caliber's assumption that one unpaid overtime hour is in controversy for every workweek used in the calculation. Doc. # 10 at 12–15, 19–20; Doc. # 18 at 6–15. He also challenges Caliber's reliance on the Complaint's references to violations occurring "at times" and to members of the relevant class "or some of them," its subclass assumptions, its waiting-time-penalty assumptions, and the declarations Caliber submitted with its Opposition. Doc. # 10 at 12–22; Doc. # 18 at 6–18; Doc. # 18-1. Those arguments challenge the substance of Caliber's jurisdictional showing, not merely the form of its notice of removal. Plaintiff has therefore raised a factual attack. *See Harris*, 980 F.3d at 700–01.

Accordingly, Caliber must prove by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Id.* at 701. As explained below, Caliber has met that burden.

**B. Caliber Has Established CAFA Jurisdiction Based on Plaintiff's Overtime Claim**

The Ninth Circuit's decision in *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025), governs much of the analysis. In *Perez*, the plaintiff brought a wage-and-hour class action and alleged that the employer committed violations "at times" and "throughout the statutory period." *Id.* at 806–07. The employer removed under CAFA and assumed that each class member experienced, each week, one hour of unpaid regular time, one hour of unpaid overtime, one compensable meal-period violation, and one compensable rest-period violation. *Id.* The district court rejected the violation-rate assumptions because the defendant had not supported them with evidence and granted the plaintiff's motion to remand. *Id.* at 807.

The Ninth Circuit vacated the remand order. It explained that "[w]hat makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue." *Id.* at 808. Some inputs, such as the number of employees in the

class, "may be most easily determined by examining the defendant's employment records," and it may therefore "make sense to expect a defendant to introduce evidence of that number." *Id.* By contrast, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* (emphasis in original). For that reason, the removing defendant may often determine the alleged violation rate by looking to the plaintiff's complaint. *Id.* The Ninth Circuit held that violation-rate assumptions do not necessarily require independent evidentiary support if they are founded on a reasonable interpretation of the complaint. *Id.* at 808–10. The Ninth Circuit accepted that the phrase "at times" in the plaintiff's complaint made it reasonable for the defendant to assume that "every week during the class period, it failed to pay all class members for one hour or regular time, one hour of overtime, a one-hour compensable meal break, and a one-hour compensable rest break." *Id.* at 806–07, 810.

*Perez* does not hold that every "at times" allegation supports any violation-rate assumption a removing defendant selects. Nor does it allow a removing defendant to substitute speculation for proof of objective inputs such as class size, workweeks, wage rates, or terminated-employee counts. The question remains whether the assumed violation rate is a reasonable interpretation of the particular complaint, viewed together with competent evidence supporting the non-violation-rate inputs. *See id.* at 808–10; *Ibarra*, 775 F.3d at 1198–99.

Several post-*Perez* district court decisions have credited as reasonable assumptions like those made by Caliber. *See Perez v. Rose Hills Co.*, No. 2:24-cv-04827-JLS-PVC, 2025 WL 2631603, at *4–5 (C.D. Cal. Aug. 29, 2025) (on remand from the Ninth Circuit, finding one-hour-per-week violation-rate assumption reasonable where the complaint alleged violations "at times" to "Plaintiff and the Class, or some of them"); *Santos v. Pictsweet Co.*, No. 2:25-cv-03181-AB-SSC, 2025 WL 2424357, at *5–6 (C.D. Cal. Aug. 20, 2025) (finding assumed violation rates reasonable

where the complaint alleged violations "at times" and to "Plaintiff and the Class, or some of them," and the defendant did not assume violations occurred "at all times").[3]

Here, Caliber's one-hour-per-week overtime assumption is a reasonable interpretation of the Complaint. The Complaint alleges that, for at least four years before the filing of the action and continuing to the present, Defendants failed "at times" to pay overtime wages to Plaintiff and other members of the Non-Exempt Class, "or some of them." Doc. # 1-1 ¶ 12. It identifies several alleged mechanisms for failing to pay overtime, including off-the-clock pre-shift work, post-shift work, work beyond scheduled hours, work during meal periods, walkie-talkie-related work, time-entry manipulation, and regular-rate miscalculation. *Id.* Plaintiff also alleges that he and other members of the Non-Exempt Class worked more than eight hours in a day, more than forty hours in a week, or seven consecutive days in a workweek without proper overtime compensation. *Id.* ¶¶ 12, 35–37.

Caliber's overtime calculation is also tied to relevant employment data. Caliber's Notice of Removal assumed one unpaid overtime hour per week, applied the 2021 California minimum wage of $14.00, applied the standard 1.5 overtime multiplier, and multiplied that amount by 220,000 workweeks. Doc. # 1 ¶ 33. But Caliber made clear that this workweek figure reflected only part of the class period and that the amount in controversy would likely be higher if the full period placed at issue by the Complaint were included. *Id.* at 7 n.3, ¶ 33.

Because Plaintiff mounted a factual attack, the Court considers Caliber's later-filed declarations substantiating the number of workweeks placed in controversy by the

[3] Plaintiff relies on several pre-*Perez* district court decisions rejecting assumed violation rates based on allegations that violations occurred "at times." Doc. # 10 at 14–15, 17–18. Those decisions remain pertinent when a defendant assumes a violation rate that is not reasonably tethered to the complaint or where the defendant fails to support objective inputs with competent evidence. But after *Perez*, the Court may not reject Caliber's one-hour-per-week overtime assumption merely because Caliber did not introduce evidence proving the alleged violation rate. *See* 131 F.4th at 808–10.

same overtime claim.[4] Fumurescu states that, between September 10, 2021 and February 13, 2025, at least 10,973 non-exempt employees worked for Caliber in California and those employees worked at least 910,875 total workweeks in non-exempt California positions. Doc. # 14-2 ¶ 8. Applying the same one-hour-per-workweek assumption, $14.00 hourly rate, and 1.5 overtime multiplier to those 910,875 workweeks places $19,128,375 in controversy for the overtime claim alone.

Plaintiff argues that this case is distinguishable from *Perez* because the Complaint alleges violations as to Plaintiff and other members of the Non-Exempt Class, "or some of them," and because the Complaint defines several subclasses. Doc. # 10 at 8, 12–15, 19–21; Doc. # 18 at 6–15. The Court does not read *Perez* to render such limiting language meaningless in all cases. But Plaintiff's argument is not persuasive here.

Had the Complaint identified only a narrow subgroup of affected employees, or had Caliber assumed violations on every shift, the "or some of them" language might carry more weight. But Caliber assumes only one unpaid overtime hour per workweek. It does not assume that every shift worked involved unpaid overtime. Doc. # 1 ¶ 33. And the Complaint alleges a common course of conduct toward the Non-Exempt Class and identifies several mechanisms by which non-exempt employees allegedly were denied overtime compensation. Doc. # 1-1 ¶¶ 12, 26–29, 35–37. On this record, the "or some of them" language does not make Caliber's one-hour-per-week assumption unreasonable.

---

[4] Plaintiff argues that Caliber cannot rely on claims it failed to include in the Notice of Removal. Doc. # 18 at 17–18. The Court does not rely on any new claim. It relies on the same overtime claim, the same Non-Exempt Class, and the same one-hour-per-workweek assumption identified in the Notice of Removal. Doc. # 1 ¶ 33. The later declarations provide evidence of the number of workweeks placed in controversy by that same claim over the broader period pleaded in the Complaint. A court may consider post-removal affidavits and declarations submitted in response to a motion to remand to substantiate jurisdictional allegations and clarify the amount in controversy at the time of removal. *See Dart Cherokee*, 574 U.S. at 88; *Ibarra*, 775 F.3d at 1197; *Jauregui*, 28 F.4th at 991 n.3; *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969). Considering that evidence does not create a new ground for removal.

The Complaint's subclass definitions do not change the result. Plaintiff is correct that the Complaint defines separate subclasses for different claims. *Id.* ¶ 21. But Caliber's overtime calculation is tied to the Non-Exempt Class, and Plaintiff expressly pleads the overtime claim on behalf of Plaintiff and other members of the Non-Exempt Class. *Id.* ¶¶ 21.A, 32, 35–37. Caliber's overtime calculation does not depend on treating the Meal Period Class, Rest Period Class, Late Pay Class, Wage Statement Class, or Expense Class as interchangeable with the Non-Exempt Class. For the overtime claim, the relevant class is the Non-Exempt Class, and Caliber's workweek evidence concerns California non-exempt employees. Doc. # 14-2 ¶ 8.

Plaintiff's reliance on *Harris* is also unpersuasive. Doc. # 10 at 14, 22. In *Harris*, the defendant assumed that all hourly employees were members of the meal-period and rest-period subclasses and worked shifts long enough to qualify for one meal period and two rest periods each week. 980 F.3d at 697–98. The Ninth Circuit held that the defendant had not supported those assumptions because it offered no evidence that all members of the hourly class worked qualifying shifts. *Id.* at 700–02.

That problem is less acute here because Caliber's overtime calculation rests on the overtime claim itself, rather than on whether every class member worked shifts long enough to trigger meal-period or rest-period obligations. Plaintiff expressly alleges that Plaintiff and other members of the Non-Exempt Class worked overtime hours without proper overtime compensation. Doc. # 1-1 ¶¶ 12, 32–37. Plaintiff argues that Caliber should have supplied shift-length data because the overtime claim depends on employees working more than eight hours in a day, forty hours in a week, or seven consecutive days in a workweek. Doc. # 18 at 13–15. But *Perez* does not require a removing defendant to prove the alleged overtime violation rate with time records when the complaint itself alleges that putative class members worked overtime and were not properly paid for it. The relevant question is whether the one-hour-per-workweek assumption is a reasonable estimate of what Plaintiff placed in controversy. Given the overtime allegations here, it is.

To be clear, the Court does not adopt a general benchmark violation rate for all overtime wage cases. It holds only that, given this Complaint's overtime allegations, the Non-Exempt Class definition, and Caliber's record-supported workweek input, one unpaid overtime hour per workweek is a reasonable estimate of the amount Plaintiff has placed in controversy. Because the resulting overtime calculation alone exceeds CAFA's $5 million threshold, the Court need not decide whether Caliber's waiting-time-penalty calculation, attorney-fee estimate, or any other damages or penalties should be included. *See Arias*, 936 F.3d at 928 n.5 (recognizing no need to calculate attorney fees where damages alone exceed the jurisdictional threshold).

For these reasons, Caliber has shown by a preponderance of the evidence that the amount in controversy exceeds $5 million.

**C. Plaintiff's Equitable-Jurisdiction Argument Does Not Require Remand**

Plaintiff also argues that remand is required—or, at minimum, that the UCL claim should be remanded—because the Court lacks equitable jurisdiction over his UCL claim for restitution of unpaid wages. Doc. # 10 at 3, 23–26; Doc. # 18 at 19–20. Plaintiff relies principally on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), which held that a plaintiff seeking equitable restitution under state law in federal court must establish that she lacks an adequate remedy at law. *Id.* at 844. That rule may affect whether Plaintiff can ultimately obtain equitable relief in this Court. It does not require remand of this action.

The Ninth Circuit has made clear that *Sonner* was not a subject-matter-jurisdiction decision. *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1303–05 (9th Cir. 2022). And in *Ruiz v. The Bradford Exchange, Ltd.*, 153 F.4th 907 (9th Cir. 2025), the Ninth Circuit confirmed that equitable jurisdiction is distinct from subject-matter jurisdiction. *Id.* at 916. *Ruiz* involved a materially different posture: the plaintiff filed in state court, sought only equitable restitution under California's UCL and False Advertising Law, and conceded that a damages remedy could have been available under

the Consumer Legal Remedies Act. *Id.* at 909–10. After the defendant removed under CAFA, the district court remanded for lack of equitable jurisdiction. *Id.* at 910. The Ninth Circuit held that a district court may remand a removed case for lack of equitable jurisdiction, but only after the removing defendant has an opportunity to waive the adequate-remedy-at-law objection. *Id.* at 913–18. Thus, *Ruiz* confirms that a lack of equitable jurisdiction may justify remand in a properly removed case seeking only equitable relief, but only after the removing defendant has an opportunity to waive the adequate-remedy-at-law objection. *Id.* at 909, 918.

Here, Plaintiff does not bring an equitable-only action. He asserts several legal claims under the California Labor Code, and, as explained above, Caliber has established CAFA jurisdiction based on Plaintiff's overtime claim. When a district court has subject-matter jurisdiction over at least part of a removed action, the ordinary remedy is not to remand the entire case because some requested relief may be unavailable in federal court. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1005–07 (9th Cir. 2001). Consistent with that distinction, district courts have generally declined to remand an entire action—or to remand a UCL claim separately—where the court otherwise has subject-matter jurisdiction over the plaintiff's legal claims, even if equitable relief may later prove unavailable.[5]

The Court therefore declines to remand this action based on Plaintiff's equitable-jurisdiction argument. This ruling does not decide whether Plaintiff may ultimately pursue UCL restitution or injunctive relief in federal court.

---

[5] *See, e.g.*, *Kim v. Walmart, Inc.*, No. 2:22-cv-08380-SB-PVC, 2023 WL 196919, at *3 (C.D. Cal. Jan. 13, 2023) (denying remand because "[l]ack of equitable jurisdiction over some claims cannot serve as a basis for remanding a case in its entirety"); *Hooks v. Dignity Health*, No. CV 22-07699-DSF (PDx), 2022 WL 17968833, at *2–3 (C.D. Cal. Dec. 27, 2022) (dismissing equitable claims without prejudice but denying remand and retaining jurisdiction over remaining claims); *Treinish v. iFit Inc.*, No. CV 22-4687-DMG (SKx), 2022 WL 5027083, at *4–5 (C.D. Cal. Oct. 3, 2022) (denying motion to remand under § 1447(c) based on lack of equitable jurisdiction); *Naseri v. Greenfield World Trade, Inc.*, No. SACV 21-01084-CJC (KESx), 2021 WL 3511040, at *1 (C.D. Cal. Aug. 10, 2021) (denying remand where the plaintiff argued that the court lacked equitable jurisdiction over UCL and CLRA claims).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is DENIED.

**IT IS SO ORDERED.**

Dated: August 18, 2026

Cynthia Valenzuela
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE